FILED by ___ D.C.

ELECTRONIC

**Jan. 9, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

WB FORT LAUDERDALE, LLC

        Plaintiff,

    v.

ENRIQUE TETTAMANTI,

        Defendant.

CIVIL ACTION  No. _____

## 09-60046-Civ-HUCK/O'SULLIVAN

### COMPLAINT

Plaintiff WB Fort Lauderdale, LLC, by and through its undersigned counsel, for its Complaint against Defendant Enrique Tettamanti, avers as follows:

### PARTIES

1.    Plaintiff WB Fort Lauderdale, LLC ("Lender") is a Delaware limited liability company with its principal place of business at One S. Orange Street, Wilmington, DE 19801.

2.    Defendant Enrique Tettamanti ("Guarantor") is an individual residing at 9100 S. Dadeland Boulevard, Miami, Florida.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 1348 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.    Venue is proper in this district under 28 U.S.C. § 1391(a) because Guarantor is subject to personal jurisdiction in the State of Florida and because a substantial part of the events giving rise to the claim occurred in the State of Florida.

### FACTS

5.     On or about July 10, 2006, ING Bank, fsb ("ING") made a $14,500,000.00 construction loan (the "Loan") to High Point Group II, LLC ("Borrower").

6.     The proceeds of the Loan were to be used in connection with the construction of a residential condominium located in Ft. Lauderdale, FL (the "Mortgaged Property") containing ten residential units (each, a "Unit").

7.     The Loan is evidenced by Borrower's promissory notes dated July 10, 2006 in favor of ING in the principal amounts of $11,000,000.00 ("Note A") and $3,500,000.00 ("Note B") respectively.  Note A and Note B are hereinafter referred to collectively as the "Notes."  A copy of Note A and Note B are attached hereto as Exhibit A.

8.     The Notes and all other documents evidencing and/or securing the Notes are hereinafter referred to as the "Loan Documents."

9.     The Notes are secured by, among other things, a guaranty dated July 10, 2006, executed by Guarantor and Luis D'Agostino ("D'Agostino"), jointly and severally (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as Exhibit B.

10.    The Notes matured on January 10, 2008.

11.    On or about January 16, 2008, ING notified Borrower and Guarantor that Borrower was in default of the Loan Documents as a result of the sale of Guarantor's interest in Borrower to D'Agostino.  A copy of the default letter is attached hereto as Exhibit C.

12.    By letter agreement dated January 23, 2008, the maturity of the Notes was extended to March 10, 2008.  A copy of the letter agreement is attached hereto as Exhibit D.

13.    Borrower failed to repay the Loan on March 10, 2008.

14.    In August, 2008, Borrower sold one Unit.

- 2 -

15.     On or about November 14, 2008, ING assigned all of its right, title and interest to the Loan Documents to Lender. A copy of the Assignment is attached hereto as <u>Exhibit E</u>.

16.     As of November 26, 2008, the outstanding principal balance of the Notes, plus all accrued and unpaid interest thereon and all late fees was $13,085,780.51.

17.     On or about November 26, 2008, Borrower conveyed the remaining nine Units to Lender in lieu of foreclosure of the mortgage securing the Notes.

18.     On or about November 26, 2008, D'Agostino paid Lender $200,000.00 in consideration of the release of his obligation under the Guaranty.

19.     The value of the remaining nine Units on or about November 26, 2008 was $8,200,000.00.

### COUNT I

#### BREACH OF CONTRACT

20.     Lender incorporates by reference paragraphs 1-19 above as if set forth in full herein.

21.     As a result of the failure to repay the Loan, Lender has suffered loss in the amount of $4,685,780.51, together with other damages including legal fees of pursuing collection action by ING.

22.     Under the Guaranty, Lender is also entitled to an award of all attorney's fees and costs it may incur in this litigation.

WHEREFORE, Plaintiff WB Fort Lauderdale, LLC, prays that the Court enter judgment in its favor and against Defendant Enrique Tettamanti, as follows:

A.    On Count I, for damages in the amount of $4,685,780.51, together with such other damages as may be proven at trial, interest, and all attorney's fees and costs incurred in this litigation; and

B.    Such other and further relief as the Court may deem just and proper.

Signed this ___9th___ day of January, 2009.

Terry Resk
FL Bar No. 336785
tresk@hsplaw.com
Susan B. Yoffee
FL Bar No.  511919
syoffee@hsplaw.com
Haile, Shaw & Pfaffenberger, P.A.
660 U. S. Highway One, Third Floor
North Palm Beach, FL  33408
Attorneys for Plaintiff
(561) 627-8100  telephone
(561) 622-7603  facsimile

# EXHIBIT A

**THIS PROMISSORY NOTE AMENDS, RESTATES AND CONSOLIDATES: (1) THAT CERTAIN PROMISSORY NOTE DATED AUGUST 29, 2005 IN THE PRINCIPAL AMOUNT OF $3,265,250.00 FROM BORROWER (AS HEREINAFTER DEFINED) TO LENDER (AS HEREINAFTER DEFINED) AS ASSIGNEE OF COLONIAL BANK, N.A., AND (2) THAT CERTAIN FUTURE ADVANCE PROMISSORY NOTE OF EVEN DATE HEREWITH IN THE PRINCIPAL AMOUNT OF $7,804,842.89**

## AMENDED AND RESTATED PROMISSORY NOTE

$11,000,000.00                                                July _10_, 2006

FOR VALUE RECEIVED, HIGH POINT GROUP II, LLC, a Florida limited liability company ("Borrower") hereby promises to pay to the order of ING BANK, FSB, a federal savings bank ("Lender"), at its office at 1 South Orange Street, Wilmington, DE 19801, or at such other address as may hereafter be specified by Lender, in lawful money of the United States of America, the principal sum of **$11,000,000.00** (the "Loan") or so much thereof as may be advanced to or for Borrower by Lender pursuant to the terms of an unrecorded Construction Loan Agreement of even date herewith between Borrower and Lender (the "Loan Agreement"), together with interest thereon at the rate or rates and in the installments and times hereinafter set forth.

    1.   <u>Definitions</u>: The following terms shall have the following meanings:

        (i)   "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Lender as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer. The rate of interest hereunder shall change simultaneously and automatically, without further notice, upon the Lender's determination and designation from time to time of the Prime Rate. The Lender's determination and designation from time to time of the Prime Rate shall not in any way preclude the Lender from making loans to other borrowers at rates that are higher or lower than or different from the referenced rate.

        (ii)   "Business Day" means a day of the week other than Saturday, Sunday or any legal holiday on which Lender's offices in Wilmington, DE are closed to the public.

        (iii)   "Default Rate" means a rate which is 5% per annum in excess of the interest rate then applicable to the Loan.

    2.   <u>Interest Rate</u>: The principal sum outstanding from time to time hereunder shall bear interest from the date disbursed until the date repaid at the rate of 0.25% in excess of the Prime Rate and each time the Prime Rate shall change, the rate of interest on the Loan shall change effective as of the date of such change.

NOTE A

3.    Terms of Payment:

(a)    Borrower shall pay interest only, at the rate or rates set forth in Paragraph 2, on the outstanding principal balance hereof in monthly installments on the first day of each month, commencing with the first day of the first calendar month following the date of the first advance hereunder.

(b)    The outstanding principal balance hereof, together with any accrued interest thereon, shall be due and payable (unless sooner paid) on the date which is 18 months from the date hereof (the "Maturity Date").

(c)    Interest on the principal balance of this Note shall be calculated on the basis of a 360-day year to the date of receipt by Lender at the place of payment designated above. If any payment is in an amount less than the amount then due, Lender may, at its option, add the amount of any such deficiency to the outstanding principal balance hereof.

(d)    Borrower shall have the option to extend the Maturity Date for an additional period of 6 months; provided, however, that each of the following shall be conditions precedent to the exercise of such option:

(i)    Borrower exercises such option by giving written notice thereof to Lender no earlier than 90 days and no later than 30 days prior to the original Maturity Date, which notice shall be accompanied by a non-refundable extension fee equal to 0.25% of the outstanding principal balance hereof; and

(ii)    On both the date such notice is given and on the original Maturity Date, there shall be no Event of Default hereunder or event which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder. If Borrower duly exercises this option to extend the term of the Loan, (A) the payments of interest set forth in subparagraph 3(a) above shall be due on the first day of each month through such optional extended term and the outstanding principal balance hereof, plus any accrued and unpaid interest shall be due and payable in full on the last day of such extension period, and (B) the term "Maturity Date" shall, from and after the date of Borrower's exercise of such option, mean the date on which the outstanding principal balance hereof and any accrued interest is due and payable as provided in this subparagraph 3(d)(ii).

(e)    If any payment is due on a day which is not a Business Day, such payment shall be due on the next Business Day.

4.    Prepayment Privilege.  Borrower shall have the privilege, at any time and from time to time, of prepaying this Note in whole or in part, without premium or penalty upon 3 business days' notice to Lender, provided that each prepayment shall be accompanied by accrued interest on the amount prepaid.

5.    Late Charges:  If any sum due hereunder is not paid within 5 days of becoming due, Lender at its option, and without the waiver on its part of any other rights, privileges and options it may have or be entitled to by the terms of this Note or any of the other Loan

Documents, may collect from Borrower a late charge to cover the extra expenses involved in handling delinquent payments equal to 5% of the delinquent installment.

6.    Security: This Note is secured by, among other things:

(a)    a mortgage (the "Mortgage") of even date herewith encumbering certain premises located in Coral Ridge, Broward County, Florida (the "Mortgaged Property");

(b)    an Assignment of Rents and Leases of even date herewith (the "Assignment of Leases");

(c)    a General Collateral Assignment of even date herewith (the "General Collateral Assignment"); and

(d)    a Guaranty Agreement of even date herewith executed by High Point Construction LLC, Luis A. D'Agostino and Enrique O. Tettamanti (collectively, "Guarantor") in favor of Lender (the "Guaranty"). This Note, the Mortgage, the Assignment of Leases, the General Collateral Assignment, the Guaranty and all other documents evidencing and/or securing the Loan are collectively referred to as the "Loan Documents".

7.    Events of Default: Each of the following shall constitute an event of default (each, an "Event of Default") hereunder:

(a)    If Borrower fails to make any payment due hereunder on the date such payment is due and such failure continues for five (5) days after notice thereof from Lender (other than sums due on the Maturity Date for which no notice or grace shall be applicable);

(b)    If an Event of Default occurs under the Loan Agreement, Mortgage or any other Loan Document; and/or

(c)    If an Event of Default occurs under that certain Promissory Note of even date herewith in the principal amount of $3,500,000.00 executed by Borrower in favor of Lender.

8.    Remedies: Upon the occurrence of an Event of Default hereunder, the entire unpaid principal balance of this Note, together with all interest accrued thereon and all other sums due or owed by Borrower hereunder or under the terms of any of the other Loan Documents shall, at the option of Lender and without notice to Borrower, become due and payable immediately with interest at the Default Rate, plus reasonable attorneys fees and costs of suit. Interest at the Default Rate shall continue to accrue on any judgment Lender may obtain against Borrower on this Note or the Mortgage until Lender acquires record title to the Mortgaged Property or the judgment and interest and costs have been paid in full. Lender may include attorney's fees and costs of suit in any complaint, judgment or assessment of damages filed or entered pursuant to this Note and/or the Mortgage.

9.    Remedies Cumulative: The remedies of Lender provided herein and the Loan Documents shall be in addition to, and not in limitation of, such other remedies as Lender may have under applicable statutes, rules of civil procedure, and/or common law. All of such

remedies shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

     10.    <u>Waivers</u>: Borrower waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, except for notices specifically required hereunder. Liability hereunder shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender.

     11.    <u>Miscellaneous</u>:

          (a)    The words "Lender" and "Borrower" mean the parties to this Note and their respective successors and assigns. If Borrower consists of more than one person or entity, the obligations of such person(s) and/or entities shall be joint and several and the word "Borrower" shall mean all or some or any of them.

          (b)    The captions contained in this Note are solely for the convenience of the parties hereto; they do not modify, amplify or give full notice of the terms and conditions of this Note.

          (c)    This Note shall be construed according to and be governed by the laws of the State of Florida.

     12.    <u>Notices</u>: All notices given hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when sent in accordance with the notice provisions contained in the Mortgage.

     **IN WITNESS WHEREOF**, Borrower has duly executed this Promissory Note under seal the day and year first above mentioned.

                      **HIGH POINT GROUP II, LLC**

**By:**    _____

                      **Luis A. D'Agostino, Managing Member**

**By:**    _____

                      **Enrique O. Tettamanti, Managing Member**

# PROMISSORY NOTE

**$3,500,000.00**                                            July *10* 2006

**FOR VALUE RECEIVED, HIGH POINT GROUP II, LLC,** a Florida limited liability company ("Borrower") hereby promises to pay to the order of **ING BANK, FSB,** a federal savings bank ("Lender"), at its office at 1 South Orange Street, Wilmington, DE 19801, or at such other address as may hereafter be specified by Lender, in lawful money of the United States of America, the principal sum of **$3,500,000.00** (the "Loan") or so much thereof as may be advanced to or for Borrower by Lender pursuant to the terms of an unrecorded Construction Loan Agreement of even date herewith between Borrower and Lender (the "Loan Agreement"), together with interest thereon at the rate or rates and in the installments and times hereinafter set forth.

1.      Definitions:  The following terms shall have the following meanings:

(i)      "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Lender as its prime rate.  The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer.  The rate of interest hereunder shall change simultaneously and automatically, without further notice, upon the Lender's determination and designation from time to time of the Prime Rate.  The Lender's determination and designation from time to time of the Prime Rate shall not in any way preclude the Lender from making loans to other borrowers at rates that are higher or lower than or different from the referenced rate.

(ii)      "Business Day" means a day of the week other than Saturday, Sunday or any legal holiday on which Lender's offices in Wilmington, DE are closed to the public.

(iii)      "Default Rate" means a rate which is 5% per annum in excess of the interest rate then applicable to the Loan.

2.      Interest Rate:  The principal sum outstanding from time to time hereunder shall bear interest from the date disbursed until the date repaid at the rate of 3.75% in excess of the Prime Rate and each time the Prime Rate shall change, the rate of interest on the Loan shall change effective as of the date of such change.

3.      Terms of Payment:

(a)      Borrower shall pay interest only, at the rate or rates set forth in Paragraph 2, on the outstanding principal balance hereof in monthly installments on the first day of each month, commencing with the first day of the first calendar month following the date of the first advance hereunder.

NOTE B

(b)     The outstanding principal balance hereof, together with any accrued interest thereon, shall be due and payable (unless sooner paid) on the date which is 18 months from the date hereof (the "Maturity Date").

(c)     Interest on the principal balance of this Note shall be calculated on the basis of a 360-day year to the date of receipt by Lender at the place of payment designated above. If any payment is in an amount less than the amount then due, Lender may, at its option, add the amount of any such deficiency to the outstanding principal balance hereof.

(d)     Borrower shall have the option to extend the Maturity Date for an additional period of 6 months; provided, however, that each of the following shall be conditions precedent to the exercise of such option:

(i)     Borrower exercises such option by giving written notice thereof to Lender no earlier than 90 days and no later than 30 days prior to the original Maturity Date, which notice shall be accompanied by a non-refundable extension fee equal to 0.25% of the outstanding principal balance hereof; and

(ii)    On both the date such notice is given and on the original Maturity Date, there shall be no Event of Default hereunder or event which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder. If Borrower duly exercises this option to extend the term of the Loan, (A) the payments of interest set forth in subparagraph 3(a) above shall be due on the first day of each month through such optional extended term and the outstanding principal balance hereof, plus any accrued and unpaid interest shall be due and payable in full on  the last day of such extension period, and (B) the term "Maturity Date" shall, from and after the date of Borrower's exercise of such option, mean the date on which the outstanding principal balance hereof and any accrued interest is due and payable as provided in this subparagraph 3(d)(ii).

(e)     If any payment is due on a day which is not a Business Day, such payment shall be due on the next Business Day.

4.     Prepayment Privilege.  Borrower shall have the privilege, at any time and from time to time, of prepaying this Note in whole or in part, without premium or penalty upon 3 business days' notice to Lender, provided that each prepayment shall be accompanied by accrued interest on the amount prepaid.

5.     Late Charges:  If any sum due hereunder is not paid within 5 days of becoming due, Lender at its option, and without the waiver on its part of any other rights, privileges and options it may have or be entitled to by the terms of this Note or any of the other Loan Documents, may collect from Borrower a late charge to cover the extra expenses involved in handling delinquent payments equal to 5% of the delinquent installment.

6.     Security:  This Note is secured by, among other things:

(a)     a mortgage (the "Mortgage") of even date herewith encumbering certain premises located in Coral Ridge, Broward County, Florida (the "Mortgaged Property");

(b)    an Assignment of Rents and Leases of even date herewith (the "Assignment of Leases");

(c)    a General Collateral Assignment of even date herewith (the "General Collateral Assignment"); and

(d)    a Guaranty Agreement of even date herewith executed by High Point Construction LLC, Luis A. D'Agostino and Enrique O. Tettamanti (collectively, "Guarantor") in favor of Lender (the "Guaranty").  This Note, the Mortgage, the Assignment of Leases, the General Collateral Assignment, the Guaranty and all other documents evidencing and/or securing the Loan are collectively referred to as the "Loan Documents".

7.    Events of Default:  Each of the following shall constitute an event of default (each, an "Event of Default") hereunder:

(a)    If Borrower fails to make any payment due hereunder on the date such payment is due and such failure continues for five (5) days after notice thereof from Lender (other than sums due on the Maturity Date for which no notice or grace shall be applicable);

(b)    If an Event of Default occurs under the Loan Agreement, Mortgage or any other Loan Document; and/or

(c)    If an Event of Default occurs under that certain Promissory Note of even date herewith in the principal amount of $11,000,000.00 executed by Borrower in favor of Lender.

8.    Remedies:  Upon the occurrence of an Event of Default hereunder, the entire unpaid principal balance of this Note, together with all interest accrued thereon and all other sums due or owed by Borrower hereunder or under the terms of any of the other Loan Documents shall, at the option of Lender and without notice to Borrower, become due and payable immediately with interest at the Default Rate, plus reasonable attorneys fees and costs of suit.  Interest at the Default Rate shall continue to accrue on any judgment Lender may obtain against Borrower on this Note or the Mortgage until Lender acquires record title to the Mortgaged Property or the judgment and interest and costs have been paid in full.  Lender may include attorney's fees and costs of suit in any complaint, judgment or assessment of damages filed or entered pursuant to this Note and/or the Mortgage.

9.    Remedies Cumulative:  The remedies of Lender provided herein and the Loan Documents shall be in addition to, and not in limitation of, such other remedies as Lender may have under applicable statutes, rules of civil procedure, and/or common law.  All of such remedies shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

10.    Waivers:  Borrower waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the

payment of this Note, except for notices specifically required hereunder.  Liability hereunder shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender.

11.   Miscellaneous:

(a)   The words "Lender" and "Borrower" mean the parties to this Note and their respective successors and assigns.  If Borrower consists of more than one person or entity, the obligations of such person(s) and/or entities shall be joint and several and the word "Borrower" shall mean all or some or any of them.

(b)   The captions contained in this Note are solely for the convenience of the parties hereto; they do not modify, amplify or give full notice of the terms and conditions of this Note.

(c)   This Note shall be construed according to and be governed by the laws of the State of Florida.

12.   Notices: All notices given hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when sent in accordance with the notice provisions contained in the Mortgage.

**IN WITNESS WHEREOF,** Borrower has duly executed this Promissory Note under seal the day and year first above mentioned.

HIGH POINT GROUP II, LLC

By: _____
Luis A. D'Agostino, Managing Member

By: _____
Enrique O. Tettamanti, Managing Member

# EXHIBIT B

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (this "Agreement") made this _10th_ day of July, 2006, by **HIGH POINT CONSTRUCTION, LLC**, a Florida limited liability company, **LUIS A. D'AGOSTINO**, an individual, and **ENRIQUE O. TETTAMANTI**, an individual (collectively, "Guarantor") with an address at 18401 Collins Avenue, Sunny Isles Beach, FL 33160 in favor of **ING BANK, FSB**, a federal savings bank ("Lender") with an address at 1 S. Orange Street, Wilmington, DE 19801.

### W I T N E S S E T H:

A.      Pursuant to a construction loan agreement of even date herewith between High Point Group II, LLC, a Florida limited liability company ("Borrower") and Lender (the "Construction Loan Agreement"), Lender agreed to make a loan to Borrower in the principal amount of $14,500,000.00 (the "Loan"). The Loan is evidenced by Borrower's promissory notes of even date herewith in favor of Lender in the respective principal amounts of (i) $11,000,000.00 ("Note 1"), and (ii) $3,500,000.00 ("Note 2"). Note 1 and Note 2 are referred to hereinafter collectively as the "Note". The Note is secured by, among other things, a Mortgage and Security Agreement (the "Mortgage") executed by Borrower in favor of Lender and encumbering certain real estate located in Coral Ridge, Broward County, Florida, as more particularly described in the Mortgage. The Construction Loan Agreement, the Note, the Mortgage and every other document evidencing and/or securing the Loan as the same may be amended, modified, restated and/or consolidated, are hereinafter referred to collectively as the "Loan Documents."

B.      All capitalized terms used herein without definition shall have the same meaning given to such terms in the Construction Loan Agreement.

C.      High Point Construction has been engaged by Borrower as the general contractor for the Project and the two individual Guarantors own a direct or indirect interest in Borrower. Guarantor will therefore receive direct and immediate benefits from the making of the Loan by Lender to Borrower. Lender, as a condition precedent to Lender's obligation to make the Loan to Borrower, and as a material inducement thereto, has required that Guarantor execute this Agreement as additional security for the Loan.

**NOW, THEREFORE**, in consideration of the Loan being made to Borrower, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Guarantor agrees as follows:

1.      **Guaranty**: Guarantor hereby jointly and severally unconditionally guarantees the timely performance of all of Borrower's obligations, including, without limitation, the payment of money, pursuant to the terms of the Note and the other Loan Documents. This shall be an agreement of suretyship as well as of guaranty and Lender may proceed directly against Guarantor, immediately upon the occurrence of any Event of Default hereunder, without being required to proceed first against Borrower or any other person or entity, or against any security Lender may hold.

2.   **Waivers:**

(a)   Guarantor hereby waives (i) any right to notice of advances made to Borrower or any other party from time to time under the provisions of the Loan Documents; (ii) all notices of presentment, demand, protest, notice of protest and of dishonor, notices of default and all other notices under the Loan Documents; (iii) any rights which Guarantor may now or hereafter have by reason of (A) any forbearance, modification, or extension which Lender may grant or to which Lender and Borrower may agree, with respect to the Loan Documents, or some or any of them; (B) any release of Borrower or of all or any part of the security Lender may now or hereafter hold for payment of the Loan; (C) any insolvency or bankruptcy of Borrower; (D) any failure or refusal by Lender to foreclose or otherwise execute upon any security now or hereafter held by Lender; (E) any lack of validity or enforceability of the Note or any other Loan Document or any other agreement or instrument relating thereto; (F) any right which Guarantor might otherwise have under any law to require Lender to take any action against Borrower to proceed against or exhaust any security held by Lender prior to proceeding and/or (G) any other circumstances which might otherwise constitute a defense available to, or a discharge of, Borrower under the Loan Documents, or Guarantor, under this Agreement.

(b)   WITHOUT LIMITATION OF SUBPARAGRAPH 2(A) ABOVE, GUARANTOR EXPRESSLY WAIVES ANY AND ALL EXISTING AND FUTURE CLAIMS AGAINST BORROWER, AND/OR ANY RIGHTS OR RECOURSE AGAINST ANY PROPERTY OR ASSETS OF BORROWER, AND/OR ANY OTHER GUARANTOR, MAKER OR ENDORSER OF THE NOTE, ARISING OUT OF ANY PAYMENT MADE BY GUARANTOR PURSUANT TO THIS GUARANTY AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY CLAIM BASED UPON SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNITY, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF LENDER AGAINST BORROWER. GUARANTOR SHALL NOT BE CONSIDERED A CREDITOR OF BORROWER WITHIN THE MEANING OF SECTION 547(B)(4)(B) OF THE UNITED STATES BANKRUPTCY CODE WITH RESPECT TO ANY RIGHTS GUARANTOR MAY HAVE AGAINST BORROWER ARISING FROM GUARANTOR'S LIABILITY HEREUNDER OR ANY PAYMENT MADE BY GUARANTOR HEREUNDER. THE WAIVER CONTAINED IN THIS PARAGRAPH SHALL CONTINUE AND SURVIVE AFTER THE TERMINATION OF THIS GUARANTY AND THE PAYMENT OF THE NOTE BUT SHALL EXPIRE ONE YEAR AND ONE DAY AFTER SUCH TERMINATION.

3.   **Enforcement:**  No enforcement of any rights or remedies by Lender against Borrower or Guarantor, shall constitute an irrevocable election of remedies by Lender. Lender shall not be subject to any marshalling of remedies or marshalling of assets.

4.   **Choice of Law:**  This Agreement shall be construed according to the laws of the State of Florida.

5.    **Covenants, Representations and Warranties:**

(a)    If Borrower makes a payment or payments to Lender, and such payment or payments or any part thereof are subsequently set aside, invalidated, declared to be fraudulent or preferential, or required, for any reason, to be repaid or paid over to a custodian, trustee, receiver, or any other party under any law relating to bankruptcy or insolvency, then to the extent of such payment or repayment, the obligation or part thereof intended to be satisfied shall be revived and continued in full force and effect as if said payment had not been made and Guarantor shall be primarily liable for such obligation.

(b)    Guarantor represents and warrants to Lender that they are fully aware of the financial condition of Borrower.  Guarantor delivers this Agreement based solely upon their own independent investigations and in no part upon any representation or statement of Lender or Borrower or any other party with respect to the financial condition of Borrower.  Guarantor is in a position to obtain, and hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Borrower that Guarantor may deem material to their obligations hereunder, and Guarantor is not relying upon, nor expecting, Lender to furnish any information concerning the financial condition of Borrower.

(c)    Guarantor agrees to furnish to Lender such financial statements and tax returns as are required of them pursuant to the Mortgage.

(d)    If Lender shall have instituted any proceeding to enforce any right or remedy under this Agreement or under the Loan Documents, or any of them, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Lender, Borrower, and Guarantor shall, subject to any determination in such proceeding, be restored severally and respectively to their respective former positions hereunder and thereunder, and thereafter all rights and remedies of Lender shall continue as though no such proceeding had been instituted.

(e)    Guarantor's liability hereunder is absolute and unconditional, and shall not be limited or in any way affected by any limitation of liability contained in the Loan Documents or some or any of them.

6.    **Subordination:**  All existing and future obligations or indebtedness of Borrower to Guarantor and the right of Guarantor to withdraw any capital invested by Guarantor in Borrower, is hereby subordinated to Guarantor's obligations hereunder; provided, however, that this Section 6 shall not prohibit High Point Construction LLC from receiving any fees owed to it pursuant to the Construction Management Agreement with Borrower dated May 12, 2006. Such subordinated indebtedness and capital shall not be paid or withdrawn in whole or in part, and Guarantor shall not accept any payment of or on account of any such indebtedness or as a withdrawal of capital without the prior written consent of Lender, and at Lender's request Guarantor shall cause Borrower to pay to Lender all or any part of such subordinated indebtedness and any capital which any Guarantor is entitled to withdraw. Any such payment by Borrower in violation of this paragraph shall be received by Guarantor in trust for Lender and Guarantor shall cause the same to be paid to Lender immediately on account of the Loan.

7.   **Events of Default; Remedies:**

(a)   Each of the following shall constitute an event of default (each, an "Event of Default") hereunder: (i) if an Event of Default occurs under and as defined in any Loan Document; (ii) if Guarantor fails to perform any of the terms or conditions of Paragraphs 5 (c) or 6 hereof and such failure continues for fifteen (15) days after notice thereof from Lender; (iii) if any representation or warranty made by Guarantor herein or in connection herewith is false or misleading in any material respect; or (iv) if Guarantor shall be adjudicated bankrupt or insolvent, or Guarantor's property shall have been sequestered, and such decree shall have continued undischarged and unstayed for sixty (60) days after the entry thereof, or if any proceedings under any federal or state law pertaining to insolvency or bankruptcy now or hereafter in effect shall be instituted against Guarantor and be consented to by the respondent or any order for relief shall be entered in such proceeding or such proceeding shall not be dismissed within sixty (60) days after such filing, or if Guarantor shall institute any such proceeding against Guarantor under any such law, or if Guarantor shall make an assignment for the benefit of creditors or shall admit in writing an inability to pay debts generally as they become due or shall consent to the appointment of a receiver or liquidator or trustee of Guarantor or of all or any part of their property.

(b)   If an Event of Default occurs hereunder, Guarantor shall, in addition to all other liabilities hereunder, be liable to Lender for all costs and expenses, including attorney's fees and court costs, incurred by Lender in enforcing this Agreement, and any judgment entered against Guarantor pursuant to this Agreement shall bear interest until paid at the Default Rate (as that phrase is defined in the Note) and not at the statutory rate of interest after judgment and shall be collectible as part of any judgment hereunder.

8.   **Cumulative Remedies**:   The rights, powers and remedies of Lender hereunder and under any other agreement now or at any time hereafter in force between Lender and Guarantor shall be cumulative and not alternative and shall be in addition to all rights, powers and remedies given to Lender by law.   Each and every Event of Default hereunder shall give rise to a separate cause of action and separate suits may be brought as each such cause of action arises and matures.

9.   **Set-Off**.   Lender and the holder of any participation in the Loan Documents shall have a lien upon and a security interest in and a right of set-off against all property of Guarantor now or at any time hereafter in the possession of or under the control of Lender or such holder in any capacity whatsoever, as security for this Agreement, provided that Guarantor in good faith and in the ordinary course of business may sell, transfer or exchange such property prior to an Event of Default hereunder.   Each such lien, security interest and right of set-off may be enforced or exercised without demand or notice to Guarantor, and shall continue in full force and effect unless specifically waived or released by Lender or such holder in writing and shall not be deemed waived by any conduct of Lender or such holder, by any failure of Lender or such holder to exercise any such right of set-off or to enforce any such lien or security interest or by any neglect or delay in so doing.

10.   **Notices**:   All notices required to be given to a party hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when presented personally

4

to such party or sent by certified or registered mail, return receipt requested, or by courier service with guaranteed overnight delivery, addressed, if to Lender, at its address as set forth in the caption to this Agreement, Attention: Mr. Kenneth Montgomery, and if to Guarantor, at their address as set forth in the caption to this Agreement. Such notice shall be deemed to be given when received if delivered personally, or two (2) business days after the date deposited with the United States Postal Service if sent by certified or registered mail, return receipt requested, or one (1) business day after the same is delivered to a courier service with guaranteed overnight delivery. Any notice of any change in such address shall also be given in the manner set forth above. Whenever the giving of notice is required, the giving of such notice may be waived in writing by the party entitled to receive such notice.

11.    **Parties Bound**:  This Agreement shall be binding upon Guarantor and their respective heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. If Guarantor is more than one person or entity, their liability shall be joint and several and the word "Guarantor" whenever used in this document shall mean all of them or some or any of them.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty Agreement, under seal, as of the day and year first above written.

HIGH POINT CONSTRUCTION, LLC

By: _____
Luis A. D'Agostino, Managing Member

By: _____
Enrique O. Tettamanti, Managing Member

_____
LUIS A. D'AGOSTINO, Individually

_____
ENRIQUE O. TETTAMANTI, Individually

5

# EXHIBIT C

DrinkerBiddle&Reath
L L P

David A. Ebby
Partner
215-988-2496
david.ebby@dbr.com

Law Offices

One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700 phone
215-988-2757 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

January 16, 2008

**VIA FEDERAL EXPRESS**

High Point Group
2765 NE 14th Street
Fort Lauderdale, FL 33304
Attn: Mr. Luis A. D'Agostino

RE:    High Point Group II, LLC ("High Point")

Dear Mr. D'Agostino:

Please be advised that this firm is counsel to ING Bank, F.S.B. ("ING"), in connection with the construction loans made by ING to High Point for the construction of the Bellagio project.

The purpose of this letter is to inform you that based on the documents provided to ING by you on January 14, 2008, which evidence the sale of Mr. Enrique O. Tettamanti's interest in High Point to you, an Event of Default has occurred under Section 17 (c) of that certain Amended and Restated Mortgage and Security Agreement from High Point in favor of ING.

In addition, ING is not a party to any documentation between you and Mr. Tettamanti regarding this transfer, including any document purporting to release Mr. Tettamanti from his obligations under the guaranty from you, Mr. Tettamanti and High Point Construction, LLC in favor of ING. Accordingly, any such purported release is a nullity and all parties to such guaranty remain fully liable to ING thereunder.

Very truly yours,

David A. Ebby

JRZ

cc:    Mr. Gary Golden (via e-mail)
       Mr. Joseph H. Westcott (via e-mail)
       Mr. Enrique O. Tettamanti (c/o Juan E. Serralles, Esq., via certified mail, return receipt requested)
       Juan E. Serralles, Esq. (via e-mail)
       Larry L. Adair, Esq. (via e-mail)

*Established 1849*

PHBF1\417768\1

# EXHIBIT D

January 23, 2008

<u>**VIA FEDERAL EXPRESS**</u>

High Point Group II, LLC
2765 NE 14th Street
Fort Lauderdale, FL 33304
Attn:   Mr. Luis A. D'Agostino

     RE:   High Point Group II, LLC ("Borrower")

Dear Mr. D'Agostino:

    Reference is hereby made to that certain Amended and Restated Promissory Note dated July 10, 2006 in the principal amount of $11,000,000.00 from Borrower in favor of ING Bank, FSB ("Lender") and that certain Promissory Note dated July 10, 2006 in the principal amount of $3,500,000.00 from Borrower in favor of Lender.  Such Promissory Notes are hereinafter referred to as the "Notes".

    As you know, the Notes matured on January 10, 2008.  The outstanding principal balance of the Notes as of the date hereof is $13,594,979.61 ($10,094,979.61 and $3,500,000.00, respectively), and such principal remains due and owing by Borrower, together with interest thereon in accordance with the terms of the Notes, without any offsets or defenses by Borrower to the payment thereof.

    As you know, an Event of Default has occurred under the Notes as a result of: (i) Borrower's failure to repay the Notes in full on their maturity date; (ii) Borrower's failure to deliver agreements of sale for the units with an aggregate sales price of $14,500,000 by December 31, 2006 in accordance with Section 8.3 of the Loan Agreement between Lender and Borrower; (iii) Borrower's failure to complete construction of the project by October 15, 2007 pursuant to Section 5.1(c) of the Loan Agreement; and (iv) the transfer of interests in Borrower without Lender's consent (see the January 16, 2008 default letter sent to Borrower by Lender's counsel).  Notwithstanding such Events of Default, at Borrower's request, Lender hereby agrees to extend the maturity date of the Notes to March 10, 2008.  Interest only on the outstanding principal balance of the Notes at the rate set forth in Paragraph 2 of each of the Notes, shall continue to be due and payable on February 1, 2008 and March 1, 2008.  On March 10, 2008, the entire principal balance of the Notes, plus all accrued and unpaid interest thereon, shall be due and payable.  All other terms and conditions of the Notes and the other documents securing the Notes remain unmodified and in full force and effect

  1 South Orange Street                                        *ING Bank, fsb*
  Wilmington, DE 19801

This extension is without prejudice to Lender's right to avail itself of all appropriate remedies as a result of the Event of Default caused by the transfer of Mr. Tettamanti's interests in Borrower without Lender's consent, and Lender hereby reserves all such rights. In addition, this extension does not constitute Lender's consent to the transfer of Mr. Tettamanti's interest in Borrower and it does not obligate Lender to grant any further extension of the maturity date of the Notes.

Please indicate your acceptance of the terms of this extension by signing in the space set forth below and returning a copy of this letter to the undersigned.

Very truly yours,

ING Direct, FSB

By: _____

Gary Golden, Vice-President


AGREED AND ACCEPTED BY:
HIGH POINT GROUP II, LLC

By: _____

Luis A. D'Agostino, Managing Member


cc:

Mr. Enrique O. Tettamanti (c/o Juan E. Serralles, Esq., via certified mail, return receipt requested)
Mr. Joseph H. Westcott
David A. Ebby, Esq. (via email)
Juan E. Serralles, Esq. (via e-mail)
Larry L. Adair, Esq. (via e-mail)

# EXHIBIT E

INSTR # 108290490
OR BK 45853 Pages 705 - 708
RECORDED 12/09/08 08:22:56
BROWARD COUNTY COMMISSION
DEPUTY CLERK 2165
#1, 4 Pages

This Instrument Prepared By And
After Recording Return To:

David A. Ebby, Esq.
Drinker, Biddle and Reath, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

## ASSIGNMENT OF NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS

THIS ASSIGNMENT OF NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS (this "Assignment"), is made by **ING BANK, FSB**, whose mailing address is 1 South Orange Street, Wilmington, DE 19801 ("Assignor") to and in favor of **WB FORT LAUDERDALE, LLC**, whose mailing address is 1 South Orange Street, Wilmington, DE 19801 ("Assignee").

### BACKGROUND

A.    Assignor is the holder of certain promissory notes in the original principal amounts of $11,000,000 and $3,500,000, respectively (collectively, the "Notes") from High Point Group II, LLC ("Mortgagor").

B.    The Notes are secured by that certain mortgage recorded in Official Records Book 40412, page 211, of the Public Records of Broward County, Florida (the "Public Records"), as assigned to Assignor by that certain Assignment recorded in the Public Records in Official Records Book 42399, page 928, as modified and consolidated by that certain Future Advance, Modification and Consolidation Agreement recorded in the Public Records in Official Records Book 42399, page 938 (collectively, the "Mortgage").

C.    The Mortgage encumbers Lots 9 and 10, Block 10, Coral Ridge, according to the plat thereof, recorded in the Public Records in Plat Book 21, page 50, now known as Porto

PHBF/ 650193.2

Venezia, a Condominium, pursuant to the Declaration of Condominium thereof recorded in the Public Records in Official Records Book 45199, page 296 (the "Property").

D.     The Notes, the Mortgage and all other documents evidencing and/or securing the loans evidenced by the Notes (collectively, the "Loans"), including, without limitation, a general collateral assignment from the Mortgagor and the guaranty of the Loans executed by Luis D'Agostino and Enrique Tettamanti, and all title insurance policies, legal opinions, financing statements, and all other documents executed and delivered to Assignor in connection with the Loans, are hereinafter referred to collectively as the "Loan Documents."

E.     Assignor desires to sell and assign to Assignee, and Assignee desires to purchase from Assignor, Assignor's right, title and interest in and to the Loan Documents.

**NOW, THEREFORE**, for and in consideration of the premises, the covenants herein set forth, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Assignor hereby (i) RELEASES, QUIT-CLAIMS and REMISES to Assignee all of its right, title and interest in and to the Property and (ii) SELLS, NEGOTIATES, ASSIGNS, ENDORSES, TRANSFERS, GRANTS, SETS OVER, CONVEYS, and DELIVERS unto Assignee all of the Assignor's right, title, interest, privilege and benefit to, in and under the Loan Documents, without recourse and/or any representations or warranties except as set forth hereinbelow.

**TO HAVE AND TO HOLD** the same together with all rights, title, interests, privileges, claims, demands and equities existing and to exist in connection therewith unto Assignee, its successors and assigns forever.

This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Assignor hereby represents that it is the sole owner and legal holder of the Loan Documents; that it has full right, power and authority to execute and deliver this Assignment; and that it has not hypothecated, transferred or assigned the Loan Documents to any other party prior to the date hereof.

**IN WITNESS WHEREOF**, this Assignment has been executed by the parties hereto effective as of the _14th_ day of November, 2008.

| Witnesses:                        | **ASSIGNOR:**                       |
|-----------------------------------|-------------------------------------|
|                                   | **ING BANK, FSB**                   |
| Name: _THOMAS HOULIHAN_           | By: _____     |
| Name: _Kelly M Jones_             | Name: _THOMAS HUGLL_                |
|                                   | Title: _SVP_                        |
| Witnesses:                        | **ASSIGNEE:**                       |
| Name: _THOMAS HOULIHAN_           | **WB FORT LAUDERDALE, LLC**         |
| Name: _Kelly M Jones_             | By: _____     |
|                                   | Name: _John Mason_                  |
|                                   | Title: _Treasurer_                  |

STATE OF DELAWARE          )
                          ) SS:
COUNTY OF NEW CASTLE      )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _THOMAS  HUGH_____, the _SVP_____ of ING Bank, FSB, freely and voluntarily under authority duly vested in him/her by said federal savings bank and that the seal affixed thereto is the true corporate seal of said federal savings bank. He/she is personally known to me or who has produced a driver's license as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _14th_ day of November, 2008.

_____
Notary Public
_Amy  D  Dolan_____
Printed Name of Notary Public

My Commission Expires:

AMY D. DOLAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 2, 2009

STATE OF DELAWARE          )
                          ) SS:
COUNTY OF NEW CASTLE      )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _John  Mason_____, the _Treasurer_____ of WB Fort Lauderdale, LLC, freely and voluntarily under authority duly vested in him/her by said limited liability company and that the seal affixed thereto is the true corporate seal of said limited liability company. He/she is personally known to me or who has produced a driver's license as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _14th_ day of November, 2008.

_____
Notary Public
_Amy  D  Dolan_____
Printed Name of Notary Public

My Commission Expires:

AMY D. DOLAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 2, 2009

ELECTRONIC

**JS 44** (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    **NOTICE: Attorneys MUST Indicate All Re-filed Cases**

**Jan. 9, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS
WB FORT LAUDERDALE LLC

**DEFENDANTS**
ENRIQUE TETTAMANTI

(b) County of Residence of First Listed Plaintiff  STATE OF DELAWARE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  MIAMI-DADE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
TERRY RESK, ESQ., HAILE SHAW PFAFFENBERGER PA
660 U.S. HWY ONE, THIRD FLOOR, N PALM BEACH FL 33408
(561) 627-8100

Attorneys (If Known)

(d) Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

09 CV 60046   PCH / JSO

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☑ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | **IMMIGRATION** | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Detainee | | Statutes |
| | Other | | ☐ 465 Other Immigration | | |
| | ☐ 440 Other Civil Rights | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE _____    DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
BREACH OF GUARANTY; 28 USC s. 1332(a) and 1348

LENGTH OF TRIAL via  1  days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 4,685,780.51
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
January 9, 2009

FOR OFFICE USE ONLY

AMOUNT 350°°    RECEIPT # 725291    IFP