UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-60046-CIV-HUCK/O'SULLIVAN

WB FORT LAUDERDALE  LLC          )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )
ENRIQUE TETTAMANTI, an individual, )
                                 )
        Defendant.               )
                                 )
_____  )

**DEFENDANT ENRIQUE TETTAMANTI'S ANSWER,
AFFIRMATIVE DEFENSES, CROSSCLAIM AGAINST ING BANK
FAB AND THIRD PARTY COMPLAINT AGAINST LUIS D'AGOSTINO**

Defendant, Enrique Tettamanti ("Tettamanti"), submits his Answer, Affirmative Defenses to Plaintiff's WB Fort Lauderdale LLC ("WB Ft. Lauderdale") Complaint; his Crossclaim against ING Bank, FAB doing business as ING Direct ("ING"); and his Third Party Complaint against Luis D'Agostino (D'Agostino") as follows:

**ANSWER**

1.      Defendant has insufficient information whether Plaintiff's allegation in Paragraph 1 of the Complaint is true and therefore the allegation is deemed denied.

2.      Defendant admits the allegations in Paragraph 2 of the Complaint.

3.      Defendant has insufficient information whether Plaintiff's allegation in Paragraph 3 of the Complaint is true and therefore the allegation is deemed denied.

Fowler Rodríguez Valdés-Fauli

4.      Defendant admits the allegations in Paragraph 4 of the Complaint.

5.      Defendant admits the allegations in Paragraph 5 of the Complaint.

6.      Defendant admits the allegations in Paragraph 6 of the Complaint.

7.      Defendant admits the allegations in Paragraph 7 of the Complaint.

8.      Defendant submits that no response to Paragraph 8 of the Complaint is necessary.

9.      Defendant admits the allegations in Paragraph 9 of the Complaint.

10.      Defendant admits the allegations in Paragraph 10 of the Complaint.

11.      Defendant admits the allegations in Paragraph 11 of the Complaint.

12.      Defendant admits that ING Bank FAB apparently entered into an agreement with D'Agostino.  Otherwise Defendant denies Paragraph 12 of the Complaint.

13.      Defendant admits Paragraph 13 of the Complaint.

14.      Defendant admits Paragraph 14 of the Complaint.

15.      Defendant has insufficient information whether Plaintiff's allegation in Paragraph 15 of the Complaint is true and therefore the allegation is deemed denied.

16.      Defendant has insufficient information whether Plaintiff's allegation in Paragraph 16 of the Complaint is true and therefore the allegation is deemed denied.

17.      Defendant has insufficient information whether Plaintiff's allegation in Paragraph 17 of the Complaint is true and therefore the allegation is deemed denied.

Fowler Rodríguez Valdés-Fauli

18.     Defendant has insufficient information whether Plaintiff's allegation in Paragraph 18 of the Complaint is true and therefore the allegation is deemed denies.

19.     Defendant has insufficient information whether Plaintiff's allegation in Paragraph 19 of the Complaint is true and therefore the allegation is deemed denied.

20.     Defendant submits that no response is necessary to Paragraph 20 of the Complaint.

21.     Defendant denies the allegations in Paragraph 21 of the Complaint.

22.     Defendant denies the allegations in Paragraph 22 of the Complaint.

23.     Defendant denies the *ad damnum* clause of Count I of the Complaint.

24.     Defendant denies any allegation in the Complaint not specifically admitted.

## AFFIRMATIVE DEFENSES

25.     As his first affirmative defense, Defendant submits that Plaintiff has failed to state a cause of action upon which relief can be granted.  More specifically, Plaintiff has failed to establish the existence of a deficiency.  Consequently, Plaintiff may not recover.

26.     As his second affirmative defense, Defendant submits that any and all recovery in this action is barred as a matter of law by the doctrine of unclean hands. Consequently, Plaintiff may not recover.

27.     As his third affirmative defense, Defendant submits that Plaintiff's recovery is barred or limited inasmuch as ING failed to take all commercially reasonable actions to recover after default of the mortgage, ING allowed the assets to be wasted or

Fowler Rodríguez Valdés-Fauli

diminished in value through no fault of Defendant, and against Defendant's advice. Consequently, Plaintiff may not recover.

28.     As his fourth affirmative defense, Defendant submits that Plaintiff's recovery is barred or limited by Plaintiff to mitigate its own damages.  Consequently, Plaintiff may not recover

29.     As his fifth affirmative defense, Defendant submits that Plaintiff's action is barred by laches.  Consequently, Plaintiff may not recover.

30.     As his sixth affirmative defense, Defendant submits that Plaintiff's claims are barred by waiver.  Consequently, Plaintiff may not recover

31.     As his seventh affirmative defense, Defendant submits that Plaintiff's claims are barred by doctrine of estoppel.  Consequently, Plaintiff may not recover

32.     As his eight affirmative defense, Defendant submits that Plaintiff's asserted calculation of damages is incorrect and therefore relief, if any, cannot be properly granted.  Consequently, Plaintiff may not recover.

33.     As a ninth affirmative defense, Defendant submits that to the extent that he is the prevailing party, he is entitled to attorney's fees and costs pursuant to Florida Statutes Section 57.105(b)(7).

34.     As his tenth affirmative defense, Defendant specifically reserves the right to plead any additional defenses that become known and available during the course of this proceeding.

Fowler Rodríguez Valdés-Fauli

**WHEREFORE,** Defendant respectfully requests that this Court dismiss Plaintiff's Complaint and grant him reasonable attorney's fees and costs and for such further relief as this Court deems just and proper.

## CROSSCLAIM

Defendant/Crossclaimant, Enrique Tettamanti ("Tettamanti"), sues Cross-Defendant, ING Bank FAB, doing business as ING Direct ("ING"), as follows:

### PARTIES

35.     Counterclaimant Tettamanti is a resident of Miami-Dade County, Florida.

36.     Counterdefendant ING is a State of Delaware corporation doing business in Miami-Dade County.

### JURISDICTION AND VENUE

37     This Court has ancillary jurisdiction over this action.

38.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) as substantial part of the events giving rise to the claim occurred in the State of Florida.

39.     This Court has personal jurisdiction over Counterdefendant by virtue of its having engaged in business in the State of Florida specifically and continuously as provided under Florida Statutes Section 48.193(1)(c) and (2).

### FACTS

40.     WB Fort Lauderdale, LLC as assignee of ING has sued Enrique Tettamanti.  A copy of the Complaint is attached hereto as Exhibit "A."

MIAMI:2087333_1

5

Fowler Rodríguez Valdés-Fauli

41.     Counterclaimant incorporates by reference Paragraphs 5 through 7 of the Complaint.

42.     High Point Group II, LLC was the borrower for the Loan which is the subject of ING's suit.

43.     Plaintiff has brought the instant action against Defendant pursuant to two promissory notes.

44.     Pursuant to the promissory notes which are attached as exhibits to the Complaint, Plaintiff claims attorney's fees and costs of bringing this action.  (See, Complaint Paragraph 22)(Exhibit "A").

45.     To the extent Counterclaimant prevails against any claim by Plaintiff/assignee of ING, Counterclaimant is entitled to attorney's fees pursuant to Florida Statutes Section 57.105(7) from ING.

WHEREFORE, for the foregoing reasons, Counterclaimant Enrique Tettamanti respectfully requests that the Court enter a judgment on its behalf as the prevailing party and for costs.

## THIRD PARTY CLAIM

Defendant/Third Party Plaintiff, Enrique Tettamanti ("Tettamanti"), sues Third Party Defendant Luis D'Agostino ("D'Agostino") for indemnification as follows:

### PARTIES

46.     Third Party Plaintiff Tettamanti is a resident of Miami-Dade County, Florida.

6

Fowler Rodríguez Valdés-Fauli

CASE NO. 09-60046-CIV-HUCK/O'SULLIVAN
*Answer, Crossclaim and Third Party Complaint*

47.    Third Party Defendant D'Agostino is a resident of the State of Floridaf.

### JURISDICTION AND VENUE

48.    This Court has ancillary jurisdiction over this matter.

49.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) as

substantial part of the events giving rise to the claim occurred in the State of Florida.

### FACTS

50.    WB Fort Lauderdale, LLC has sued Enrique Tettamanti.  A copy of the

Complaint is attached hereto as Exhibit "A."

51.    Third Party Plaintiff incorporates by reference Paragraphs 5 through 7 of

the Complaint.

52.    On or about December 18, 2006, Tettamanti and D'Agostino entered into

an agreement whereby D'Agostino purchased Tettamanti's interests in High Point

Group II, LLC. The agreement ("Agreement") is attached hereto as Exhibit "B."

53.    High Point Group II, LLC was the borrower for the Loan which is the

subject of ING's suit.

54.    In part, the Agreement provides:

> 6.    Indemnification. This Agreement hereby irrevocably
> and unconditionally agrees and undertakes to indemnify and
> hold harmless Tettamanti against and from all costs, losses,
> and damages, of whatever nature and however arising that
> Tettamanti may incur, suffer or sustain or have imposed on
> him by reason or arising in any way out of or in relation to
> the Terramanti Guraranty and shall immediately pay such
> amounts upon demand.

Fowler Rodríguez Valdés-Fauli

55.     The "Tettamanti Guaranty" referred to in Paragraph 6 of the Agreement (Exhibit "B") is the July 10, 2006 guaranty which is the subject of the instant suit by ING. (See, Exhibit "A", Paragraph 9).

56.     All conditions precedent to bring this action have been fulfilled, have been waived or would be futile.

### ACTION FOR INDEMNIFICATION

57.     Under the Agreement between Third Party Plaintiff and Third Party Defendant, D'Agosino is obligated to indemnify, protect and hold Tettamanti harmless from any loss or damages by reason of liability to ING for the Loan which is the subject of the Complaint herein (Exhibit "A").

58.     In breach of said Agreement, D'Agostino has failed to protect, indemnify and hold Tettamanti harmless.

57.     Tettamanti has been damaged inasmuch as he has been sued by ING.

59.     To the extent Tettamanti is obligated to pay to defend against the suit by ING or is obligated to pay any damages, as a result of the Compliant, D'Agostino is entirely liable under the Agreement for such damages.

60.     The Agreement provides that the prevailing party in any litigation under the Agreement will be entitled to collect reasonable attorney's fees and costs from the non-prevailing party.

*CASE NO. 09-60046-CIV-HUCK/O'SULLIVAN*
*Answer, Crossclaim and Third Party Complaint*

61.    Third Party Plaintiff has retained the law firm of Fowler Rodriguez Valdes-Fauli and has agreed to pay the firm reasonable attorney's fees and costs to prosecute this claim and to defend the claim by ING.

WHEREFORE, for the foregoing reasons Third Party Plaintiff, Enrique Tettamanti, respectfully requests that the Court grant him damages, including attorney's fees and costs against Third Party Defendant Luis D'Agostino and for such other appropriate relief.

Respectfully Submitted,

FOWLER RODRIGUEZ VALDES-FAULI

*Attorneys for Defendant/ Third Party Plaintiff*
355 Alhambra Circle, Suite #801
Coral Gables, Florida 33134
Tel.: (786) 364-8400
Fax: (786) 364-8401

By: _____
Luis S. Konski
Florida Bar #207837
Email: Lkonski@frvf-law.com

Fowler Rodríguez Valdés-Fauli

CASE NO. 09-60046-CIV-HUCK/O'SULLIVAN
*Answer, Crossclaim and Third Party Complaint*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 2, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I additionally certify that the foregoing document was also sent to Plaintiff's counsel, by regular mail:

Terry Resk, Esq.
Susan B. Yoffee
Haile Shaw & Pfaffenberger, P.A.
660 U.S. Highway One, 3rd Floor
North Palm Beach, FL  33406
tresk@hsplaw.com
syoffee@hsplaw.com
Tel:    305-627-8100
Fax:    305-622-87603
*Attorneys for Plaintiff,*
*WB Fort Lauderdale, LLC*

Andrew J. Flame, Esq.
Drinker Biddle & Reath, LLP
1100 N. Market Street, Ste. 1000
Wilmington, Delaware  10801
Tel:  302-467-4214
Fax: 302-467-4201
Andrew.flame@dbr.com
*Co-Counsel for Plaintiff,*
*WB Fort Lauderdale, LLC*

By: _____

Fowler Rodríguez Valdés-Fauli

# EXHIBIT "A"

ELECTRONIC

Jan. 9, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.· MIAMI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

WB FORT LAUDERDALE, LLC

    Plaintiff,

    v.

ENRIQUE TETTAMANTI,

    Defendant.

CIVIL ACTION No. _____

## 09-60046-Civ-HUCK/O'SULLIVAN

### COMPLAINT

Plaintiff WB Fort Lauderdale, LLC, by and through its undersigned counsel, for its Complaint against Defendant Enrique Tettamanti, avers as follows:

### PARTIES

1.    Plaintiff WB Fort Lauderdale, LLC ("Lender") is a Delaware limited liability company with its principal place of business at One S. Orange Street, Wilmington, DE 19801.

2.    Defendant Enrique Tettamanti ("Guarantor") is an individual residing at 9100 S. Dadeland Boulevard, Miami, Florida.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 1348 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.    Venue is proper in this district under 28 U.S.C. § 1391(a) because Guarantor is subject to personal jurisdiction in the State of Florida and because a substantial part of the events giving rise to the claim occurred in the State of Florida.

<u>FACTS</u>

5.　　On or about July 10, 2006, ING Bank, fsb ("ING") made a $14,500,000.00 construction loan (the "Loan") to High Point Group II, LLC ("Borrower").

6.　　The proceeds of the Loan were to be used in connection with the construction of a residential condominium located in Ft. Lauderdale, FL (the "Mortgaged Property") containing ten residential units (each, a "Unit").

7.　　The Loan is evidenced by Borrower's promissory notes dated July 10, 2006 in favor of ING in the principal amounts of $11,000,000.00 ("Note A") and $3,500,000.00 ("Note B") respectively. Note A and Note B are hereinafter referred to collectively as the "Notes." A copy of Note A and Note B are attached hereto as <u>Exhibit A</u>.

8.　　The Notes and all other documents evidencing and/or securing the Notes are hereinafter referred to as the "Loan Documents."

9.　　The Notes are secured by, among other things, a guaranty dated July 10, 2006, executed by Guarantor and Luis D'Agostino ("D'Agostino"), jointly and severally (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as <u>Exhibit B</u>.

10.　　The Notes matured on January 10, 2008.

11.　　On or about January 16, 2008, ING notified Borrower and Guarantor that Borrower was in default of the Loan Documents as a result of the sale of Guarantor's interest in Borrower to D'Agostino. A copy of the default letter is attached hereto as <u>Exhibit C</u>.

12.　　By letter agreement dated January 23, 2008, the maturity of the Notes was extended to March 10, 2008. A copy of the letter agreement is attached hereto as <u>Exhibit D</u>.

13.　　Borrower failed to repay the Loan on March 10, 2008.

14.　　In August, 2008, Borrower sold one Unit.

- 2 -

15.    On or about November 14, 2008, ING assigned all of its right, title and interest to the Loan Documents to Lender.  A copy of the Assignment is attached hereto as Exhibit E.

16.    As of November 26, 2008, the outstanding principal balance of the Notes, plus all accrued and unpaid interest thereon and all late fees was $13,085,780.51.

17.    On or about November 26, 2008, Borrower conveyed the remaining nine Units to Lender in lieu of foreclosure of the mortgage securing the Notes.

18.    On or about November 26, 2008, D'Agostino paid Lender $200,000.00 in consideration of the release of his obligation under the Guaranty.

19.    The value of the remaining nine Units on or about November 26, 2008 was $8,200,000.00.

COUNT I

BREACH OF CONTRACT

20.    Lender incorporates by reference paragraphs 1-19 above as if set forth in full herein.

21.    As a result of the failure to repay the Loan, Lender has suffered loss in the amount of $4,685,780.51, together with other damages including legal fees of pursuing collection action by ING.

22.    Under the Guaranty, Lender is also entitled to an award of all attorney's fees and costs it may incur in this litigation.

WHEREFORE, Plaintiff WB Fort Lauderdale, LLC, prays that the Court enter judgment in its favor and against Defendant Enrique Tottamanti, as follows:

    A.    On Count I, for damages in the amount of $4,685,780.51, together with such other

damages as may be proven at trial, interest, and all attorney's fees and costs incurred in this

litigation; and

    B.    Such other and further relief as the Court may deem just and proper.

Signed this _____ 9th _____ day of January, 2009.

Terry Resk
FL Bar No. 336785
tresk@hsplaw.com
Susan B. Yoffee
FL Bar No. 511919
syoffee@hsplaw.com
Haile, Shaw & Pfaffenberger, P.A.
660 U. S. Highway One, Third Floor
North Palm Beach, FL 33408
Attorneys for Plaintiff
(561) 627-8100 telephone
(561) 622-7603 facsimile

# EXHIBIT A

THIS PROMISSORY NOTE AMENDS, RESTATES AND CONSOLIDATES: (1) THAT
CERTAIN PROMISSORY NOTE DATED AUGUST 29, 2005 IN THE PRINCIPAL
AMOUNT OF $3,265,250.00 FROM BORROWER (AS HEREINAFTER DEFINED) TO
LENDER (AS HEREINAFTER DEFINED) AS ASSIGNEE OF COLONIAL BANK, N.A.,
AND (2) THAT CERTAIN FUTURE ADVANCE PROMISSORY NOTE OF EVEN DATE
HEREWITH IN THE PRINCIPAL AMOUNT OF $7,804,842.89

## AMENDED AND RESTATED PROMISSORY NOTE

$11,000,000.00                                                    July _10_ , 2006

    FOR VALUE RECEIVED, HIGH POINT GROUP II, LLC, a Florida limited
liability company ("Borrower") hereby promises to pay to the order of  ING BANK, FSB, a
federal savings bank ("Lender"), at its office at 1 South Orange Street, Wilmington, DE 19801,
or at such other address as may hereafter be specified by Lender, in lawful money of the United
States of America, the principal sum of $11,000,000.00 (the "Loan") or so much thereof as may
be advanced to or for Borrower by Lender pursuant to the terms of an unrecorded Construction
Loan Agreement of even date herewith between Borrower and Lender (the "Loan Agreement"),
together with interest thereon at the rate or rates and in the installments and times hereinafter set
forth.

    1.   Definitions:  The following terms shall have the following meanings:

      (i)    "Prime Rate" means the variable per annum rate of interest so
designated from time to time by the Lender as its prime rate.  The Prime Rate is a reference rate
and does not necessarily represent the lowest or best rate being charged to any customer.  The
rate of interest hereunder shall change simultaneously and automatically, without further notice,
upon the Lender's determination and designation from time to time of the Prime Rate.  The
Lender's determination and designation from time to time of the Prime Rate shall not in any way
preclude the Lender from making loans to other borrowers at rates that are higher or lower than
or different from the referenced rate.

      (ii)    "Business Day" means a day of the week other than Saturday,
Sunday or any legal holiday on which Lender's offices in Wilmington, DE are closed to the
public.

      (iii)    "Default Rate" means a rate which is 5% per annum in excess of
the interest rate then applicable to the Loan.

    2.    Interest Rate:  The principal sum outstanding from time to time hereunder shall
bear interest from the date disbursed until the date repaid at the rate of 0.25% in excess of the
Prime Rate and each time the Prime Rate shall change, the rate of interest on the Loan shall
change effective as of the date of such change.

NOTE A

3.   <u>Terms of Payment</u>:

(a)   Borrower shall pay interest only, at the rate or rates set forth in Paragraph 2, on the outstanding principal balance hereof in monthly installments on the first day of each month, commencing with the first day of the first calendar month following the date of the first advance hereunder.

(b)   The outstanding principal balance hereof, together with any accrued interest thereon, shall be due and payable (unless sooner paid) on the date which is 18 months from the date hereof (the "Maturity Date").

(c)   Interest on the principal balance of this Note shall be calculated on the basis of a 360-day year to the date of receipt by Lender at the place of payment designated above. If any payment is in an amount less than the amount then due, Lender may, at its option, add the amount of any such deficiency to the outstanding principal balance hereof.

(d)   Borrower shall have the option to extend the Maturity Date for an additional period of 6 months; <u>provided</u>, <u>however</u>, that each of the following shall be conditions precedent to the exercise of such option:

(i)   Borrower exercises such option by giving written notice thereof to Lender no earlier than 90 days and no later than 30 days prior to the original Maturity Date, which notice shall be accompanied by a non-refundable extension fee equal to 0.25% of the outstanding principal balance hereof; and

(ii)   On both the date such notice is given and on the original Maturity Date, there shall be no Event of Default hereunder or event which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder. If Borrower duly exercises this option to extend the term of the Loan, (A) the payments of interest set forth in subparagraph 3(a) above shall be due on the first day of each month through such optional extended term and the outstanding principal balance hereof, plus any accrued and unpaid interest shall be due and payable in full on the last day of such extension period, and (B) the term "Maturity Date" shall, from and after the date of Borrower's exercise of such option, mean the date on which the outstanding principal balance hereof and any accrued interest is due and payable as provided in this subparagraph 3(d)(ii).

(e)   If any payment is due on a day which is not a Business Day, such payment shall be due on the next Business Day.

4.   <u>Prepayment Privilege</u>. Borrower shall have the privilege, at any time and from time to time, of prepaying this Note in whole or in part, without premium or penalty upon 3 business days' notice to Lender, provided that each prepayment shall be accompanied by accrued interest on the amount prepaid.

5.   <u>Late Charges</u>: If any sum due hereunder is not paid within 5 days of becoming due, Lender at its option, and without the waiver on its part of any other rights, privileges and options it may have or be entitled to by the terms of this Note or any of the other Loan

Documents, may collect from Borrower a late charge to cover the extra expenses involved in handling delinquent payments equal to 5% of the delinquent installment.

6.   Security:  This Note is secured by, among other things:

(a)   a mortgage (the "Mortgage") of even date herewith encumbering certain premises located in Coral Ridge, Broward County, Florida (the "Mortgaged Property");

(b)   an Assignment of Rents and Leases of even date herewith (the "Assignment of Leases");

(c) .   a General Collateral Assignment of even date herewith (the "General Collateral Assignment"); and

(d)   a Guaranty Agreement of even date herewith executed by High Point Construction LLC, Luis A. D'Agostino and Enrique O. Tettamanti (collectively, "Guarantor") in favor of Lender (the "Guaranty").  This Note, the Mortgage, the Assignment of Leases, the General Collateral Assignment, the Guaranty and all other documents evidencing and/or securing the Loan are collectively referred to as the "Loan Documents".

7.   Events of Default:  Each of the following shall constitute an event of default (each, an "Event of Default") hereunder:

(a)   If Borrower fails to make any payment due hereunder on the date such payment is due and such failure continues for five (5) days after notice thereof from Lender (other than sums due on the Maturity Date for which no notice or grace shall be applicable);

(b)   If an Event of Default occurs under the Loan Agreement, Mortgage or any other Loan Document; and/or

(c)   If an Event of Default occurs under that certain Promissory Note of even date herewith in the principal amount of $3,500,000.00 executed by Borrower in favor of Lender.

8.   Remedies:  Upon the occurrence of an Event of Default hereunder, the entire unpaid principal balance of this Note, together with all interest accrued thereon and all other sums due or owed by Borrower hereunder or under the terms of any of the other Loan Documents shall, at the option of Lender and without notice to Borrower, become due and payable immediately with interest at the Default Rate, plus reasonable attorneys fees and costs of suit.  Interest at the Default Rate shall continue to accrue on any judgment Lender may obtain against Borrower on this Note or the Mortgage until Lender acquires record title to the Mortgaged Property or the judgment and interest and costs have been paid in full.  Lender may include attorney's fees and costs of suit in any complaint, judgment or assessment of damages filed or entered pursuant to this Note and/or the Mortgage.

9.   Remedies Cumulative:  The remedies of Lender provided herein and the Loan Documents shall be·in addition to, and not in limitation of, such other remedies as Lender may have under applicable statutes, rules of civil procedure, and/or common law.  All of such

remedies shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

10.   Waivers: Borrower waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, except for notices specifically required hereunder. Liability hereunder shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender.

11.   Miscellaneous:

(a)   The words "Lender" and "Borrower" mean the parties to this Note and their respective successors and assigns. If Borrower consists of more than one person or entity, the obligations of such person(s) and/or entities shall be joint and several and the word "Borrower" shall mean all or some or any of them.

(b)   The captions contained in this Note are solely for the convenience of the parties hereto; they do not modify, amplify or give full notice of the terms and conditions of this Note.

(c)   This Note shall be construed according to and be governed by the laws of the State of Florida.

12.   Notices: All notices given hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when sent in accordance with the notice provisions contained in the Mortgage.

IN WITNESS WHEREOF, Borrower has duly executed this Promissory Note under seal the day and year first above mentioned.

HIGH POINT GROUP II, LLC

By:

Luis A. D'Agostino, Managing Member

By:

Enrique O. Tettamanti, Managing Member

<u>PROMISSORY NOTE</u>

$3,500,000.00                                                    July 10 2006

 FOR VALUE RECEIVED, HIGH POINT GROUP II, LLC, a Florida limited liability company ("Borrower") hereby promises to pay to the order of **ING BANK, FSB**, a federal savings bank ("Lender"), at its office at 1 South Orange Street, Wilmington, DE 19801, or at such other address as may hereafter be specified by Lender, in lawful money of the United States of America, the principal sum of $3,500,000.00 (the "Loan") or so much thereof as may be advanced to or for Borrower by Lender pursuant to the terms of an unrecorded Construction Loan Agreement of even date herewith between Borrower and Lender (the "Loan Agreement"), together with interest thereon at the rate or rates and in the installments and times hereinafter set forth.

 1. <u>Definitions</u>: The following terms shall have the following meanings:

  (i) "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Lender as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer. The rate of interest hereunder shall change simultaneously and automatically, without further notice, upon the Lender's determination and designation from time to time of the Prime Rate. The Lender's determination and designation from time to time of the Prime Rate shall not in any way preclude the Lender from making loans to other borrowers at rates that are higher or lower than or different from the referenced rate.

  (ii) "Business Day" means a day of the week other than Saturday, Sunday or any legal holiday on which Lender's offices in Wilmington, DE are closed to the public.

  (iii) "Default Rate" means a rate which is 5% per annum in excess of the interest rate then applicable to the Loan.

 2. <u>Interest Rate</u>: The principal sum outstanding from time to time hereunder shall bear interest from the date disbursed until the date repaid at the rate of 3.75% in excess of the Prime Rate and each time the Prime Rate shall change, the rate of interest on the Loan shall change effective as of the date of such change.

 3. <u>Terms of Payment</u>:

  (a) Borrower shall pay interest only, at the rate or rates set forth in Paragraph 2, on the outstanding principal balance hereof in monthly installments on the first day of each month, commencing with the first day of the first calendar month following the date of the first advance hereunder.

NOTE B

(b)    The outstanding principal balance hereof, together with any accrued interest thereon, shall be due and payable (unless sooner paid) on the date which is 18 months from the date hereof (the "Maturity Date").

(c)    Interest on the principal balance of this Note shall be calculated on the basis of a 360-day year to the date of receipt by Lender at the place of payment designated above. If any payment is in an amount less than the amount then due, Lender may, at its option, add the amount of any such deficiency to the outstanding principal balance hereof.

(d)    Borrower shall have the option to extend the Maturity Date for an additional period of 6 months; provided, however, that each of the following shall be conditions precedent to the exercise of such option:

(i)    Borrower exercises such option by giving written notice thereof to Lender no earlier than 90 days and no later than 30 days prior to the original Maturity Date, which notice shall be accompanied by a non-refundable extension fee equal to 0.25% of the outstanding principal balance hereof; and

(ii)    On both the date such notice is given and on the original Maturity Date, there shall be no Event of Default hereunder or event which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder. If Borrower duly exercises this option to extend the term of the Loan, (A) the payments of interest set forth in subparagraph 3(a) above shall be due on the first day of each month through such optional extended term and the outstanding principal balance hereof, plus any accrued and unpaid interest shall be due and payable in full on the last day of such extension period, and (B) the term "Maturity Date" shall, from and after the date of Borrower's exercise of such option, mean the date on which the outstanding principal balance hereof and any accrued interest is due and payable as provided in this subparagraph 3(d)(ii).

(e)    If any payment is due on a day which is not a Business Day, such payment shall be due on the next Business Day.

4.    Prepayment Privilege.  Borrower shall have the privilege, at any time and from time to time, of prepaying this Note in whole or in part, without premium or penalty upon 3 business days' notice to Lender, provided that each prepayment shall be accompanied by accrued interest on the amount prepaid.

5.    Late Charges.  If any sum due hereunder is not paid within 5 days of becoming due, Lender at its option, and without the waiver on its part of any other rights, privileges and options it may have or be entitled to by the terms of this Note or any of the other Loan Documents, may collect from Borrower a late charge to cover the extra expenses involved in handling delinquent payments equal to 5% of the delinquent installment.

6.    Security.  This Note is secured by, among other things:

(a)    a mortgage (the "Mortgage") of even date herewith encumbering certain premises located in Coral Ridge, Broward County, Florida (the "Mortgaged Property");

(b)   an Assignment of Rents and Leases of even date herewith (the "Assignment of Leases");

(c)   a General Collateral Assignment of even date herewith (the "General Collateral Assignment"); and

(d)   a Guaranty Agreement of even date herewith executed by High Point Construction LLC, Luis A. D'Agostino and Enrique O. Tettamanti (collectively, "Guarantor") in favor of Lender (the "Guaranty"). This Note, the Mortgage, the Assignment of Leases, the General Collateral Assignment, the Guaranty and all other documents evidencing and/or securing the Loan are collectively referred to as the "Loan Documents".

7.   <u>Events of Default</u>:  Each of the following shall constitute an event of default (each, an "Event of Default") hereunder:

(a)   If Borrower fails to make any payment due hereunder on the date such payment is due and such failure continues for five (5) days after notice thereof from Lender (other than sums due on the Maturity Date for which no notice or grace shall be applicable);

(b)   If an Event of Default occurs under the Loan Agreement, Mortgage or any other Loan Document; and/or

(c)   If an Event of Default occurs under that certain Promissory Note of even date herewith in the principal amount of $11,000,000.00 executed by Borrower in favor of Lender.

8.   <u>Remedies</u>:  Upon the occurrence of an Event of Default hereunder, the entire unpaid principal balance of this Note, together with all interest accrued thereon and all other sums due or owed by Borrower hereunder or under the terms of any of the other Loan Documents shall, at the option of Lender and without notice to Borrower, become due and payable immediately with interest at the Default Rate, plus reasonable attorneys fees and costs of suit. Interest at the Default Rate shall continue to accrue on any judgment Lender may obtain against Borrower on this Note or the Mortgage until Lender acquires record title to the Mortgaged Property or the judgment and interest and costs have been paid in full. Lender may include attorney's fees and costs of suit in any complaint, judgment or assessment of damages filed or entered pursuant to this Note and/or the Mortgage.

9.   <u>Remedies Cumulative</u>:  The remedies of Lender provided herein and the Loan Documents shall be in addition to, and not in limitation of, such other remedies as Lender may have under applicable statutes, rules of civil procedure, and/or common law. All of such remedies shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

10.   <u>Waivers</u>:  Borrower waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the

payment of this Note, except for notices specifically required hereunder. Liability hereunder shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender.

11. Miscellaneous:

(a) The words "Lender" and "Borrower" mean the parties to this Note and their respective successors and assigns. If Borrower consists of more than one person or entity, the obligations of such person(s) and/or entities shall be joint and several and the word "Borrower" shall mean all or some or any of them.

(b) The captions contained in this Note are solely for the convenience of the parties hereto; they do not modify, amplify or give full notice of the terms and conditions of this Note.

(c) This Note shall be construed according to and be governed by the laws of the State of Florida.

12. Notices: All notices given hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when sent in accordance with the notice provisions contained in the Mortgage.

IN WITNESS WHEREOF, Borrower has duly executed this Promissory Note under seal the day and year first above mentioned.

HIGH POINT GROUP II, LLC

By: _____
    Luis A. D'Agostino, Managing Member

By: _____
    Enrique O. Tottamanti, Managing Member

# EXHIBIT B

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Agreement") made this 10th day of July, 2006, by HIGH POINT CONSTRUCTION, LLC, a Florida limited liability company, LUIS A. D'AGOSTINO, an individual, and ENRIQUE O. TETTAMANTI, an individual (collectively, "Guarantor") with an address at 18401 Collins Avenue, Sunny Isles Beach, FL 33160 in favor of ING BANK, FSB, a federal savings bank ("Lender") with an address at 1 S. Orange Street, Wilmington, DE 19801.

### WITNESSETH:

A.    Pursuant to a construction loan agreement of even date herewith between High Point Group II, LLC, a Florida limited liability company ("Borrower") and Lender (the "Construction Loan Agreement"), Lender agreed to make a loan to Borrower in the principal amount of $14,500,000.00 (the "Loan"). The Loan is evidenced by Borrower's promissory notes of even date herewith in favor of Lender in the respective principal amounts of (i) $11,000,000.00 ("Note 1"), and (ii) $3,500,000.00 ("Note 2"). Note 1 and Note 2 are referred to hereinafter collectively as the "Note". The Note is secured by, among other things, a Mortgage and Security Agreement (the "Mortgage") executed by Borrower in favor of Lender and encumbering certain real estate located in Coral Ridge, Broward County, Florida, as more particularly described in the Mortgage. The Construction Loan Agreement, the Note, the Mortgage and every other document evidencing and/or securing the Loan as the same may be amended, modified, restated and/or consolidated, are hereinafter referred to collectively as the "Loan Documents."

B.    All capitalized terms used herein without definition shall have the same meaning given to such terms in the Construction Loan Agreement.

C.    High Point Construction has been engaged by Borrower as the general contractor for the Project and the two individual Guarantors own a direct or indirect interest in Borrower. Guarantor will therefore receive direct and immediate benefits from the making of the Loan by Lender to Borrower. Lender, as a condition precedent to Lender's obligation to make the Loan to Borrower, and as a material inducement thereto, has required that Guarantor execute this Agreement as additional security for the Loan.

NOW, THEREFORE, in consideration of the Loan being made to Borrower, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Guarantor agrees as follows:

1.    **Guaranty**: Guarantor hereby jointly and severally unconditionally guarantees the timely performance of all of Borrower's obligations, including, without limitation, the payment of money, pursuant to the terms of the Note and the other Loan Documents. This shall be an agreement of suretyship as well as of guaranty and Lender may proceed directly against Guarantor, immediately upon the occurrence of any Event of Default hereunder, without being required to proceed first against Borrower or any other person or entity, or against any security Lender may hold.

2.      Waivers:

(a)     Guarantor hereby waives (i) any right to notice of advances made to Borrower or any other party from time to time under the provisions of the Loan Documents; (ii) all notices of presentment, demand, protest, notice of protest and of dishonor, notices of default and all other notices under the Loan Documents; (iii) any rights which Guarantor may now or hereafter have by reason of (A) any forbearance, modification, or extension which Lender may grant or to which Lender and Borrower may agree, with respect to the Loan Documents, or some or any of them; (B) any release of Borrower or of all or any part of the security Lender may now or hereafter hold for payment of the Loan; (C) any insolvency or bankruptcy of Borrower; (D) any failure or refusal by Lender to foreclose or otherwise execute upon any security now or hereafter held by Lender; (E) any lack of validity or enforceability of the Note or any other Loan Document or any other agreement or instrument relating thereto; (F) any right which Guarantor might otherwise have under any law to require Lender to take any action against Borrower to proceed against or exhaust any security held by Lender prior to proceeding and/or (G) any other circumstances which might otherwise constitute a defense available to, or a discharge of, Borrower under the Loan Documents, or Guarantor, under this Agreement.

(b)     WITHOUT LIMITATION OF SUBPARAGRAPH 2(A) ABOVE, GUARANTOR EXPRESSLY WAIVES ANY AND ALL EXISTING AND FUTURE CLAIMS AGAINST BORROWER, AND/OR ANY RIGHTS OR RECOURSE AGAINST ANY PROPERTY OR ASSETS OF BORROWER, AND/OR ANY OTHER GUARANTOR, MAKER OR ENDORSER OF THE NOTE, ARISING OUT OF ANY PAYMENT MADE BY GUARANTOR PURSUANT TO THIS GUARANTY AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY CLAIM BASED UPON SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNITY, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF LENDER AGAINST BORROWER. GUARANTOR SHALL NOT BE CONSIDERED A CREDITOR OF BORROWER WITHIN THE MEANING OF SECTION 547(B)(4)(B) OF THE UNITED STATES BANKRUPTCY CODE WITH RESPECT TO ANY RIGHTS GUARANTOR MAY HAVE AGAINST BORROWER ARISING FROM GUARANTOR'S LIABILITY HEREUNDER OR ANY PAYMENT MADE BY GUARANTOR HEREUNDER. THE WAIVER CONTAINED IN THIS PARAGRAPH SHALL CONTINUE AND SURVIVE AFTER THE TERMINATION OF THIS GUARANTY AND THE PAYMENT OF THE NOTE BUT SHALL EXPIRE ONE YEAR AND ONE DAY AFTER SUCH TERMINATION.

3.      Enforcement:  No enforcement of any rights or remedies by Lender against Borrower or Guarantor, shall constitute an irrevocable election of remedies by Lender.  Lender shall not be subject to any marshalling of remedies or marshalling of assets.

4.      Choice of Law:  This Agreement shall be construed according to the laws of the State of Florida.

2

5.     <u>Covenants, Representations and Warranties:</u>

        (a)     If Borrower makes a payment or payments to Lender, and such payment
or payments or any part thereof are subsequently set aside, invalidated, declared to be fraudulent
or preferential, or required, for any reason, to be repaid or paid over to a custodian, trustee,
receiver, or any other party under any law relating to bankruptcy or insolvency, then to the extent
of such payment or repayment, the obligation or part thereof intended to be satisfied shall be
revived and continued in full force and effect as if said payment had not been made and
Guarantor shall be primarily liable for such obligation.

        (b)     Guarantor represents and warrants to Lender that they are fully aware of
the financial condition of Borrower. Guarantor delivers this Agreement based solely upon their
own independent investigations and in no part upon any representation or statement of Lender or
Borrower or any other party with respect to the financial condition of Borrower. Guarantor is in
a position to obtain, and hereby assumes full responsibility for obtaining, any additional
information concerning the financial condition of Borrower that Guarantor may deem material to
their obligations hereunder, and Guarantor is not relying upon, nor expecting, Lender to furnish
any information concerning the financial condition of Borrower.

        (c)     Guarantor agrees to furnish to Lender such financial statements and tax
returns as are required of them pursuant to the Mortgage.

        (d)     If Lender shall have instituted any proceeding to enforce any right or
remedy under this Agreement or under the Loan Documents, or any of them, and such
proceeding shall have been discontinued or abandoned for any reason, or shall have been
determined adversely to Lender, then and in every such case Lender, Borrower, and Guarantor
shall, subject to any determination in such proceeding, be restored severally and respectively to
their respective former positions hereunder and thereunder, and thereafter all rights and remedies
of Lender shall continue as though no such proceeding had been instituted.

        (e)     Guarantor's liability hereunder is absolute and unconditional, and shall not
be limited or in any way affected by any limitation of liability contained in the Loan Documents
or some or any of them.

6.     <u>Subordination:</u> All existing and future obligations or indebtedness of Borrower
to Guarantor and the right of Guarantor to withdraw any capital invested by Guarantor in
Borrower, is hereby subordinated to Guarantor's obligations hereunder; provided, however, that
this Section 6 shall not prohibit High Point Construction LLC from receiving any fees owed to it
pursuant to the Construction Management Agreement with Borrower dated May 12, 2006. Such
subordinated indebtedness and capital shall not be paid or withdrawn in whole or in part, and
Guarantor shall not accept any payment of or on account of any such indebtedness or as a
withdrawal of capital without the prior written consent of Lender, and at Lender's request
Guarantor shall cause Borrower to pay to Lender all or any part of such subordinated
indebtedness and any capital which any Guarantor is entitled to withdraw. Any such payment by
Borrower in violation of this paragraph shall be received by Guarantor in trust for Lender and
Guarantor shall cause the same to be paid to Lender immediately on account of the Loan.

7.     **Events of Default; Remedies:**

(a)     Each of the following shall constitute an event of default (each, an "Event of Default") hereunder:  (i) if an Event of Default occurs under and as defined in any Loan Document; (ii) if Guarantor fails to perform any of the terms or conditions of Paragraphs 5 (c) or 6 hereof and such failure continues for fifteen (15) days after notice thereof from Lender; (iii) if any representation or warranty made by Guarantor herein or in connection herewith is false or misleading in any material respect; or (iv) if Guarantor shall be adjudicated bankrupt or insolvent, or Guarantor's property shall have been sequestered, and such decree shall have continued undischarged and unstayed for sixty (60) days after the entry thereof, or if any proceedings under any federal or state law pertaining to insolvency or bankruptcy now or hereafter in effect shall be instituted against Guarantor and be consented to by the respondent or any order for relief shall be entered in such proceeding or such proceeding shall not be dismissed within sixty (60) days after such filing, or if Guarantor shall institute any such proceeding against Guarantor under any such law, or if Guarantor shall make an assignment for the benefit of creditors or shall admit in writing an inability to pay debts generally as they become due or shall consent to the appointment of a receiver or liquidator or trustee of Guarantor or of all or any part of their property.

(b)     If an Event of Default occurs hereunder, Guarantor shall, in addition to all other liabilities hereunder, be liable to Lender for all costs and expenses, including attorney's fees and court costs, incurred by Lender in enforcing this Agreement, and any judgment entered against Guarantor pursuant to this Agreement shall bear interest until paid at the Default Rate (as that phrase is defined in the Note) and not at the statutory rate of interest after judgment and shall be collectible as part of any judgment hereunder.

8.     **Cumulative Remedies:**  The rights, powers and remedies of Lender hereunder and under any other agreement now or at any time hereafter in force between Lender and Guarantor shall be cumulative and not alternative and shall be in addition to all rights, powers and remedies given to Lender by law.  Each and every Event of Default hereunder shall give rise to a separate cause of action and separate suits may be brought as each such cause of action arises and matures.

9.     **Set-Off.**  Lender and the holder of any participation in the Loan Documents shall have a lien upon and a security interest in and a right of set-off against all property of Guarantor now or at any time hereafter in the possession of or under the control of Lender or such holder in any capacity whatsoever, as security for this Agreement, provided that Guarantor in good faith and in the ordinary course of business may sell, transfer or exchange such property prior to an Event of Default hereunder.  Each such lien, security interest and right of set-off may be enforced or exercised without demand or notice to Guarantor, and shall continue in full force and effect unless specifically waived or released by Lender or such holder in writing and shall not be deemed waived by any conduct of Lender or such holder, by any failure of Lender or such holder to exercise any such right of set-off or to enforce any such lien or security interest or by any neglect or delay in so doing.

10.     **Notices:**  All notices required to be given to a party hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when presented personally

to such party or sent by certified or registered mail, return receipt requested, or by courier service with guaranteed overnight delivery, addressed, if to Lender, at its address as set forth in the caption to this Agreement, Attention: Mr. Kenneth Montgomery, and if to Guarantor, at their address as set forth in the caption to this Agreement. Such notice shall be deemed to be given when received if delivered personally, or two (2) business days after the date deposited with the United States Postal Service if sent by certified or registered mail, return receipt requested, or one (1) business day after the same is delivered to a courier service with guaranteed overnight delivery. Any notice of any change in such address shall also be given in the manner set forth above. Whenever the giving of notice is required, the giving of such notice may be waived in writing by the party entitled to receive such notice.

11. **Parties Bound:** This Agreement shall be binding upon Guarantor and their respective heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. If Guarantor is more than one person or entity, their liability shall be joint and several and the word "Guarantor" whenever used in this document shall mean all of them or some or any of them.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty Agreement, under seal, as of the day and year first above written.

HIGH POINT CONSTRUCTION, LLC

By: _____
Luis A. D'Agostino, Managing Member

By: _____
Enrique O. Tettamanti, Managing Member

_____
LUIS A. D'AGOSTINO, Individually

_____
ENRIQUE O. TETTAMANTI, Individually

# EXHIBIT C

# DrinkerBiddle&Reath

David A. Ebby
Partner
215-988-2496
david.ebby@dbr.com

Law Offices

One Logan Square
18th and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700 phone
215-988-2757 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
KENTUCKY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

January 16, 2008

**VIA FEDERAL EXPRESS**

High Point Group
2765 NE 14th Street
Fort Lauderdale, FL  33304
Attn:  Mr. Luis A. D'Agostino

    RE:   High Point Group II, LLC ("High Point")

Dear Mr. D'Agostino:

    Please be advised that this firm is counsel to ING Bank, F.S.B. ("ING"), in connection with the construction loans made by ING to High Point for the construction of the Bellagio project.

    The purpose of this letter is to inform you that based on the documents provided to ING by you on January 14, 2008, which evidence the sale of Mr. Enrique O. Tettamanti's interest in High Point to you, an Event of Default has occurred under Section 17 (c) of that certain Amended and Restated Mortgage and Security Agreement from High Point in favor of ING.

    In addition, ING is not a party to any documentation between you and Mr. Tettamanti regarding this transfer, including any document purporting to release Mr. Tettamanti from his obligations under the guaranty from you, Mr. Tettamanti and High Point Construction, LLC in favor of ING.  Accordingly, any such purported release is a nullity and all parties to such guaranty remain fully liable to ING thereunder.

                         Very truly yours,

                         David A. Ebby

JRZ

cc:   Mr. Gary Golden (via e-mail)
      Mr. Joseph H. Westcott (via e-mail)
      Mr. Enrique O. Tettamanti (c/o Juan E. Serralles, Esq., via certified mail, return
      receipt requested)
      Juan E. Serralles, Esq. (via e-mail)
      Larry L. Adair, Esq. (via e-mail)

Established 1849

PHBP1\M1776931

# EXHIBIT D

January 23, 2008

**VIA FEDERAL EXPRESS**

High Point Group II, LLC
2765 NE 14th Street
Fort Lauderdale, FL 33304
Attn: Mr. Luis A. D'Agostino

RE:   High Point Group II, LLC ("Borrower")

Dear Mr. D'Agostino:

Reference is hereby made to that certain Amended and Restated Promissory Note dated July 10, 2006 in the principal amount of $11,000,000.00 from Borrower in favor of ING Bank, FSB ("Lender") and that certain Promissory Note dated July 10, 2006 in the principal amount of $3,500,000.00 from Borrower in favor of Lender. Such Promissory Notes are hereinafter referred to as the "Notes".

As you know, the Notes matured on January 10, 2008. The outstanding principal balance of the Notes as of the date hereof is $13,594,979.61 ($10,094,979.61 and $3,500,000.00, respectively), and such principal remains due and owing by Borrower, together with interest thereon in accordance with the terms of the Notes, without any offsets or defenses by Borrower to the payment thereof.

As you know, an Event of Default has occurred under the Notes as a result of: (i) Borrower's failure to repay the Notes in full on their maturity date; (ii) Borrower's failure to deliver agreements of sale for the units with an aggregate sales price of $42,500,000 by December 31, 2006 in accordance with Section 8.3 of the Loan Agreement between Lender and Borrower; (iii) Borrower's failure to complete construction of the project by October 15, 2007 pursuant to Section 5.1(c) of the Loan Agreement; and (iv) the transfer of interests in Borrower without Lender's consent (see the January 10, 2008 default letter sent to Borrower by Lender's counsel). Notwithstanding such Events of Default, at Borrower's request, Lender hereby agrees to extend the maturity date of the Notes to March 10, 2008. Interest only on the outstanding principal balance of the Notes at the rate set forth in Paragraph 2 of each of the Notes, shall continue to be due and payable on February 1, 2008 and March 1, 2008. On March 10, 2008, the entire principal balance of the Notes, plus all accrued and unpaid interest thereon, shall be due and payable. All other terms and conditions of the Notes and the other documents securing the Notes remain unmodified and in full force and effect.

1 South Orange Street
Wilmington, DE 19801.

ING Bank, fsb

This extension is without prejudice to Lender's right to avail itself of all appropriate remedies as a result of the Event of Default caused by the transfer of Mr. Tettimanti's interest in Borrower without Lender's consent, and Lender hereby reserves all such rights. In addition, this extension does not constitute Lender's consent to the transfer of Mr. Tettimanti's interest in Borrower and it does not obligate Lender to grant any further extension of the maturity date of the Notes.

Please indicate your acceptance of the terms of this extension by signing in the space set forth below and returning a copy of this letter to the undersigned.

Very truly yours,

ING Direct, FSB

By: _____
Gary Graden, Vice President

AGREED AND ACCEPTED BY
HIGH POINT GROUP II, LLC

By: _____
Luis A. D'Agostino, Managing Member

cc:
Mr. Enrique O. Tettimanti (c/o Juan E. Serralles, Esq.) (via certified mail, return receipt requested)
Mr. Joseph H. Westcott
David A. Gibby, Esq. (via email)
Juan E. Serralles, Esq. (via email)
Larry L. Adair, Esq. (via email)

# EXHIBIT E

Venezia, a Condominium, pursuant to the Declaration of Condominium thereof recorded in the Public Records in Official Records Book 45199, page 296 (the "Property").

D.    The Notes, the Mortgage and all other documents evidencing and/or securing the loans evidenced by the Notes (collectively, the "Loans"), including, without limitation, a general collateral assignment from the Mortgagor and the guaranty of the Loans executed by Luis D'Agostino and Enrique Tettamanti, and all title insurance policies, legal opinions, financing statements, and all other documents executed and delivered to Assignor in connection with the Loans, are hereinafter referred to collectively as the "Loan Documents."

E.    Assignor desires to sell and assign to Assignee, and Assignee desires to purchase from Assignor, Assignor's right, title and interest in and to the Loan Documents.

NOW, THEREFORE, for and in consideration of the premises, the covenants herein set forth, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Assignor hereby (i) RELEASES, QUIT-CLAIMS and REMISES to Assignee all of its right, title and interest in and to the Property and (ii) SELLS, NEGOTIATES, ASSIGNS, ENDORSES, TRANSFERS, GRANTS, SETS OVER, CONVEYS, and DELIVERS unto Assignee all of the Assignor's right, title, interest, privilege and benefit to, in and under the Loan Documents, without recourse and/or any representations or warranties except as set forth hereinbelow.

TO HAVE AND TO HOLD the same together with all rights, title, interests, privileges, claims, demands and equities existing and to exist in connection therewith unto Assignee, its successors and assigns forever.

This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

PHBW/650193.2

Assignor hereby represents that it is the sole owner and legal holder of the Loan Documents; that it has full right, power and authority to execute and deliver this Assignment; and that it has not hypothecated, transferred or assigned the Loan Documents to any other party prior to the date hereof.

IN WITNESS WHEREOF, this Assignment has been executed by the parties hereto effective as of the _14th_ day of November, 2008.

| Witnesses: | ASSIGNOR: |
|---|---|
| Name: THOMAS HOULIHAN | ING BANK, FSB |
| Name: KELLY M. JONES | By: Name: THOMAS HUGH Title: SVP |
| Witnesses: | ASSIGNEE: |
| Name: THOMAS HOULIHAN | WB FORT LAUDERDALE, LLC |
| Name: KELLY M. JONES | By: Name: John Mason Title: Treasurer |

STATE OF DELAWARE )
) SS:
COUNTY OF NEW CASTLE )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by ___THOMAS HUGH___, the ___SVP___ of ING Bank, FSB, freely and voluntarily under authority duly vested in him/her by said federal savings bank and that the seal affixed thereto is the true corporate seal of said federal savings bank. He/she is personally known to me or who has produced a driver's license as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _14th_ day of November, 2008.

_____
Notary Public
AMY D DOLAN
Printed Name of Notary Public

My Commission Expires:

AMY D. DOLAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 2, 2009

STATE OF DELAWARE )
) SS:
COUNTY OF NEW CASTLE )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by ___John Mason___, the ___Treasurer___ of WB Fort Lauderdale, LLC, freely and voluntarily under authority duly vested in him/her by said limited liability company and that the seal affixed thereto is the true corporate seal of said limited liability company. He/she is personally known to me or who has produced a driver's license as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _14th_ day of November, 2008.

_____
Notary Public
AMY D DOLAN
Printed Name of Notary Public

My Commission Expires:

AMY D. DOLAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 2, 2009

PHBP/650193.2

# EXHIBIT "B"

# AGREEMENT

**THIS AGREEMENT** ("Agreement") is made as of the 18th day of December, 2006 (the "Effective Date") by and between Luis A. D'Agostino ("D'Agostino") and Enrique O. Tettamanti ("Tettamanti") as the sole Managers and Members of High Point LLC, High Point Group, LLC, High Point Group II, LLC and High Point Construction, LLC (all of which are hereinafter collectively referred to as the "Companies").

# RECITALS

**WHEREAS,** on October 18, 2006, D'Agostino tendered an offer (the "Offer") to purchase Tettamanti's entire membership interests in and to the Companies, all as more particularly set forth in said Offer.

**WHEREAS,** Tettamanti has accepted the Offer.

**WHEREAS,** D'Agostino and Tettamanti have agreed that as part of the transaction contemplated in the Offer, Tettamanti shall remain bound by that certain Guaranty ("Tettamanti Guaranty") dated July 10, 2006 and executed by Tettamanti in favor of ING Bank FSB ("ING") as security for that certain loan from ING to High Point Group II, LLC (the "ING Loan"), all as more particularly set forth in this Agreement.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged, the parties hereto agree as follows:

1.    <u>Recitals</u>.  The above recitals are true, correct, incorporated herein and form a part of this Agreement.

2.    <u>Term of Tettamanti Guaranty</u>.  Notwithstanding anything to the contrary, but subject to the provisions of this Agreement (including those specifically contained in Paragraph 3 below), the "term" of the Tettamanti Guaranty shall automatically expire on September 30, 2007.

3.    <u>Guaranty Fee</u>.  In consideration of Tettamanti remaining bound by the Tettamanti Guaranty, D'Agostino shall deliver to Tettamanti on or before the Effective Date evidence that Tettamanti has been fully released of all responsibility under a personal guaranty executed in connection with a loan extended by Builders' Financial in favor of one or more of the Companies. In addition to the foregoing, if the Tettamanti Guaranty is still in effect on March 31, 2007, D'Agostino shall pay Tettamanti the following amounts for the respective periods of time that the Tettamanti Guaranty is in effect. All of said amounts shall be prorated on a daily basis until such time as the Tettamanti Guaranty is no longer in effect. At the end of each month if the Tettamanti Guaranty is still in effect then D'Agostino shall pay Tettamanti the amount that is payable for said month. In the event the Tettamanti Guaranty is terminated during any of the periods described below then D'Agostino shall pay Tettamanti the prorated amount upon such termination.

      (a)    $10,000.00 for the period April 1, 2007 through April 30, 2007;
      (b)    $15,000.00 for the period May 1, 2007 through May 31, 2007;
      (c)    $20,000.00 for the period June 1, 2007 through June 30, 2007;
      (d)    $25,000.00 for the period July 1, 2007 through July 31, 2007;

(e) $30,000.00 for the period August 1, 2007 through August 31, 2007; and
(f) $35,000.00 for the period September 1, 2007 through September 30, 2007.

All payments contemplated herein shall be paid as directed by Tettamanti from time to time. Notwithstanding anything to the contrary, if D'Agostino fails to timely make any of the payments herein contemplated to Tettamanti, then Tettamanti shall have the right at any time after said date that such payment was due, to notify ING that Tettamanti will not be responsible for any future amounts advanced to D'Agostino or any of the Companies.

4.  **Limitation of Tettamanti Guaranty.**  Notwithstanding anything to the contrary, the Tettamanti Guaranty shall only extend to the amounts owed on the ING Loan as of the Effective Date.

5.  **Defaults.**  D'Agostino shall be responsible, and the Tettamanti Guaranty shall provide, that Tettamanti shall be immediately notified of any default occurring under the ING Loan.

6.  **Indemnification.**  D'Agostino hereby irrevocably and unconditionally agrees and undertakes to indemnify and hold harmless Tettamanti against and from all costs, losses and damages, of whatever nature and however arising that Tettamanti may incur, suffer or sustain or have imposed on him by reason or, arising in any way out of or in relation to the Tettamanti Guaranty and shall immediately pay such amounts upon demand.

7.  **Amendment.**  This Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof. This Agreement may not be amended or modified except by a written instrument signed by both parties hereto.

8.  **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which will be an original, but all of which together will constitute one instrument.

9.  **Attorneys' Fees.**  In the event of any litigation arising out of or under this Agreement, the prevailing party shall be entitled to collect from the non-prevailing party reasonable attorneys' fees and costs.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the day and year written above.

Luis A. D'Agostino
Member
High Point LLC
High Point Group, LLC
High Point Group II, LLC
High Point Construction, LLC

Enrique O. Tettamanti
Member
High Point LLC
High Point Group, LLC
High Point Group II, LLC
High Point Construction, LLC

V:\2001\001\Agreements\Agreement Tettamanti and D'Agostino re ING (final - penalty).doc

2